IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

CLARK PHILOGENE,

    Plaintiff,

v.                                     Case No.: PWG-17-1318

DATA NETWORKS, INC.,[1]

    Defendant.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Plaintiff Clark Philogene, a Black male, began working for Defendant Data Networks, Inc. ("Company") in June 2014. Am. Compl. 1, ECF No. 17. Mr. Philogene believes that he was harassed and discriminated against by individuals at the Company based on his race, national origin, and color, and that he was retaliated against for having complained to Human Resources about other employees' actions. *Id.* at 3–4. Ultimately, Mr. Philogene's employment at the Company was terminated, *id*. at 5; he filed a charge with the EEOC, EEOC Charge, ECF No. 1-1; and then he filed this litigation, ECF No. 1. He alleges discrimination (in the form of both harassment and termination) based on race, color, and national origin and retaliation, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. Am. Compl.

---

[1] Plaintiff incorrectly identifies Defendant as "ASRC Federal/Data Networks Corporation." Defendant explains that Data Networks, Inc. was Plaintiff's employer and is the proper Defendant; it is a wholly owned subsidiary of ASRC Federal Holding Company, LLC. *See* Def.'s Mot. 1 n.1; Disclosure Stmt., ECF No. 8. The Clerk shall update the docket to reflect Defendant's proper name.

The Company has filed a motion to dismiss Mr. Philogene's Amended Complaint in its entirety for lack of subject matter jurisdiction over his claims for national origin-based discrimination and for failure to state a claim on his remaining claims. Def.'s Mot., ECF No. 20.[2] Because this Court does not have subject matter jurisdiction over Mr. Philogene's national origin-based discrimination claims and Mr. Philogene has failed to state a claim for discrimination based on race or color, or a claim for retaliation, I will grant Defendant's motion and dismiss this case with prejudice.

## Background[3]

Mr. Philogene began working for the Company in June 2014. Am. Compl. 1. He contacted the Human Resources Department on October 1, 2015 and on May 19, 2016 to complain about perceived harassment. *See* Pl.'s Ex. 20–22, ECF No. 1-3. In particular, the email exchange from May 19, 2016 contains the subject line "uncomfortable work environment" and details that he is "being constantly harassed." *Id.*

Mr. Philogene alleges that supervisors Crystal Ray and Bryan Hennessy discriminated against him in the following ways: Mr. Philogene was told to sit at a desk and not to move; Ms. Ray told fabricated stories about Mr. Philogene to other employees at a weekly meeting; Ms. Ray took away Mr. Philogene's assigned cubicle and instituted a first come, first served policy for office seating; Mr. Philogene was forced to use the conference room when a desk was not available; and Mr. Philogene was yelled at and talked to in a condescending manner. *Id.* at 2–4.

---

[2] The parties fully briefed the motion. ECF Nos. 20-1, 21, 23. A hearing is not necessary. *See* Loc. R. 105.6.

[3] For the purposes of considering Defendant's motion, I accept the facts that Plaintiff has alleged in his Amended Complaint as true. *See Aziz v. Alcolac*, 658 F.3d 388, 390 (4th Cir. 2011). "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c).

Mr. Philogene also alleges that Ms. Ray and Mr. Hennessey made inappropriate comments to him and others and allegedly did so to instigate a confrontation with him. *Id.* at 3 (e.g., Mr. Hennessey stated to Ms. Ray "Let's poke the Bear," apparently referring to Mr. Philogene). Mr. Philogene also alleges that Lora Neal (who presumably is his coworker) told him that "Ray told her 'Slavery is the best thing that ever happened to America.'" *Id.* at 4. Mr. Philogene alleges that their final act of discrimination was to have his employment terminated. *Id.* Specifically, he alleges that he "performed satisfactorily for almost three years and received 3 rases [sic]," yet was terminated, while "Darren Disque (white) performed sub-par and was never reprimanded." *Id.*

Based on these actions, Mr. Philogene claims that he "was [treated] differently and unfairly by Crystal Ray and Bryan Hennessy based on [his] race." *Id.* Mr. Philogene believes that these actions, in addition to having been motivated by his race and color, were retaliation for his having spoken to Human Resources. *Id.* at 4–5.

On February 21, 2017, Mr. Philogene filed a charge with the EEOC alleging discrimination on the basis of race and color, retaliation, and "other," which he specified as "conflict of interest/Libel." EEOC Charge. After receiving a right to sue notice from the EEOC, ECF No. 1-2, Mr. Philogene filed this lawsuit, alleging that he was discriminated against and harassed on the basis of race, national origin, and color and that he was retaliated against during his employment (e.g. being called to meetings and being talked to in a condescending manner) and by his employment having been terminated.[4] He is not represented by counsel. Am. Compl.

---

[4] Mr. Philogene's Amended Complaint (as well as his original) does not enumerate the causes of actions he brings in this litigation. It is clear he is attempting to raise causes of action under Title VII. Mr. Philogene also mentions "defamation" and claims that he suffered multiple health issues in conjunction with the alleged misconduct by the Company. Am. Compl. 4. However,

3

Consistent with the order that I issued at the start of this case governing the filing of motions, the Company filed a pre-motion letter, stating the grounds for a motion to dismiss that it wanted to file, which included Mr. Philogene's failure to exhaust his national origin-based claims, and his failure to establish a *prima face* case of discrimination, harassment, and retaliation by failing to plead sufficient facts. Pre–Mot. Ltr., ECF No. 9. I allowed Mr. Philogene the opportunity to amend his complaint to address the deficiencies the Company identified in its letter, ECF No. 15, and he did so. The Company, still believing the pleading to be deficient for the reasons previously disclosed to Mr. Philogene in its pre-motion letter, has moved to dismiss. Mr. Philogene filed an Opposition, mostly reiterating the allegations of the Amended Complaint and not addressing directly the Company's reasons why dismissal would be proper. Further, Mr. Philogene's Opposition requested that the Court "not focus on the technicalities, but to please focus on the fact, the violation of the civil rights act of 1964 (Title VII), events, and occurrences." Pl.'s Opp'n 5.

Notably, when a defendant's motion to dismiss a complaint states specific deficiencies that warrant dismissal, and presents supporting legal arguments, it is the plaintiff's obligation to respond substantively to address them. Failure to respond to the defendants' arguments constitutes abandonment of those claims. *See Whittaker v. David's Beautiful People, Inc.*, No. DKC-14-2483, 2016 WL 429963, at *3 n.3 (D. Md. Feb. 4, 2016); *Sewell v. Strayer Univ.*, 956 F. Supp. 2d 658, 669 n.9 (D. Md. 2013); *Ferdinand–Davenport v. Children's Guild,* 742 F. Supp. 2d 772, 777 & 783 (D. Md. 2010). Any abandoned claims are subject to dismissal with prejudice. *Sewell*, 2013 WL 6858867, at *4 ("retaliation claim was dismissed with prejudice . . . because she abandoned [the] claim by failing to address it in the reply brief."); *Farrish v. Navy*

---

neither defamation nor the information related to his health issues has been pleaded as a proper cause of action and therefore will not be considered.

*Fed. Credit Union*, No. DKC-16-1429, 2017 WL 4418416, at *3 (D. Md. Oct. 5, 2017). While abandonment of claims by failing to respond to them in his opposition alone may be a sufficient reason to dismiss a complaint, I nonetheless will independently consider the substantive sufficiency of his claims.

### **Standards of Review**

"[F]ederal courts lack subject matter jurisdiction over Title VII claims for which a plaintiff has failed to exhaust administrative remedies." *Murphy v. Adams*, No. DKC-12-1975, 2014 WL 3845804, at *7 (D. Md. Aug. 4, 2014) (quoting *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 406 (4th Cir. 2013)). For this reason, Defendant moves to dismiss Mr. Philogene's claim of discrimination on the basis of national origin, under Fed. R. Civ. P. 12(b)(1). In considering Defendant's motion, "the Court may . . . consider matters beyond the allegations in the complaint" because Defendant asserts that "the jurisdictional allegations in the complaint are not true." *Fontell v. MCGEO UFCW Local 1994*, No. AW-09-2526, 2010 WL 3086498, at *3 (D. Md. Aug. 6, 2010); *see Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). The Court "regard[s] the pleadings' allegations as mere evidence on the issue," and its consideration of additional evidence does not "convert[] the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac Ry. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991); *see Adams*, 697 F.2d at 1219 ("A trial court may consider evidence by affidavit, depositions or live testimony without converting the proceeding to one for summary judgment.").

Defendant also moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), which provides for "the dismissal of a complaint if it fails to state a claim upon which relief can be granted." *Velencia v. Drezhlo*, No. RDB-12-237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012). This rule's purpose "is to test the sufficiency of a complaint and not to resolve contests

surrounding the facts, the merits of a claim, or the applicability of defenses." *Id.* (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)). To that end, the Court bears in mind the requirements of Fed. R. Civ. P. 8, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), when considering a motion to dismiss pursuant to Rule 12(b)(6). Specifically, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678–79; *see Velencia*, 2012 WL 6562764, at *4 (discussing standard from *Iqbal* and *Twombly*). Similarly, "unsupported legal allegations need not be accepted." *Nam v. 2012 Inc.*, No. DKC-15-1931, 2016 WL 107198, at *3 (D. Md. Jan. 11, 2016) (citing *Revene v. Charles Cty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989)). Although the filings of self-represented parties are afforded a more generous construction by the Court than those submitted by counsel, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), that deference does not absolve them from complying with the essential requirements of pleading plausible claims, *see Holsey v. Collins*, 90 F.R.D. 122, 128 (D. Md. 1981) (citing *Inmates v. Owens*, 561 F.2d 560, 562–63 (4th Cir. 1977)).

In an employment discrimination case such as this, the plaintiff "is not required to plead facts that constitute a *prima facie* case in order to survive a motion to dismiss," but "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Nam*, 2016 WL 107198, at *3 (quoting *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010)); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–15 (2002). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

**Discussion**

*Failure to Exhaust Administrative Remedies – National Origin*

Defendants argue that Mr. Philogene failed to exhaust his administrative remedies with regard to his claims of discrimination on the basis of national origin because he did not include these claims in his EEOC Charge. Def.'s Mem. 7. In a Title VII action, a plaintiff may bring "[o]nly those discrimination claims stated in the initial charge, those reasonably related to the original [EEOC] complaint, and those developed by reasonable investigation of the original complaint." *Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996)). This means that "if the EEOC charge alleges discrimination on one basis, such as race, and the formal litigation alleges discrimination on a separate basis, such as sex," the claim raised in court on a separate basis will be barred. *Id.* In establishing and applying this rule, the Fourth Circuit has "sought to strike a balance between providing notice to employers and the [agency] on the one hand and ensuring plaintiffs are not tripped up over technicalities on the other." *Sydnor v. Fairfax Cty., Va.*, 681 F.3d 591, 594 (4th Cir. 2012).

Here, Mr. Philogene, who sues for retaliation and race, color, and national origin discrimination in the form of harassment and wrongful termination, only checked the boxes for "race," "color," "retaliation," and "other," which he specified as "conflict of interest/Libel," as the basis for discrimination on his EEOC Charge. Further, the narrative he provided in the EEOC Charge (from which Defendant was put on notice of the basis for his discrimination and retaliation complaint), specifically mentioned race and color and retaliation but did not mention national origin once:

> I was employed with ASRC Federal Holding Corp since June 10, 2014. My job classification was Information Systems Security Analyst.
>
> I have been subjected to different terms and conditions by my employer. For example, I was harassed, belittled and targeted by my direct supervisors, Crystal Ray and Brian Hennessey. I was denied access to training opportunities and I was made to seem incompetent despite my qualifications and certifications. In addition, I believe I have been a victim of retaliation since filing grievances with Human Resource personnel, Sue Dowling, and Trina Colie. My employment was terminated on February 17, 2017.
>
> I believe I have been discriminated against due to my race (Black/African American), and color (Brown), and retaliated against for engaging in protected activity in violation of Title VII of the Civil Rights Act of 1964, as amended.

EEOC Charge.

The EEOC Charge did not put Defendants on notice of a claim of national origin discrimination, and allowing the national origin-based discrimination claims to proceed would defeat the purpose of the EEOC filing. *See Sloop v. Mem'l Mission Hosp., Inc.*, 198 F.3d 147, 149 (4th Cir. 1999) ("[O]ne of the purposes of requiring a party to file charges with the EEOC is to put the charged party on notice of the claims raised against it."). Therefore, he has not exhausted his administrative remedies for these claims. *See Jones*, 551 F.3d at 300; *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132–33 (4th Cir. 2004) (affirming summary judgment on claims of color and sex discrimination, because EEOC charge only alleged race discrimination); *Krpan v. Bd. of Educ. of Howard Cty.*, No. ELH-12-2789, 2013 WL 4400475, at *5–6 (D. Md. Aug. 15, 2013) (granting motion to dismiss count for discrimination based on national origin because plaintiff "did not include such a claim in his complaint to the EEOC"); *Riley v. Tech. & Mgmt. Servs. Corp.*, 872 F. Supp. 1454, 1459 (D. Md. 1995) (rejecting claims of hostile work environment and sexual harassment presented for the first time in plaintiffs' opposition because the EEO charges only alleged discrimination). Accordingly, this Court lacks subject matter jurisdiction over Mr. Philogene's claims based on national origin discrimination. *See Balas*, 711 F.3d at 406.

*Discriminatory Termination Based on Race and Color in Violation of Title VII*

Mr. Philogene brings claims of discrimination based on race and color under Title VII. Am. Compl. 2. To state a claim for racial or color discrimination in violation of Title VII, Plaintiff must allege: "(1) membership in a protected class; (2) satisfactory job performance; (3) an adverse employment action; and (4) less favorable treatment than similarly situated employees outside the protected class." *Linton v. Johns Hopkins Univ. Applied Physics Lab., LLC,* No. JKB–10–276, 2011 WL 4549177, at *5 (D. Md. Sept. 28, 2011) (citing *White v. BFI Waste Servs.,* 375 F.3d 288, 295 (4th Cir. 2004)). The Company does not dispute either the first or third elements. However, the Company argues that Mr. Philogene's claims fail because he has failed to plead he was performing satisfactorily at the time of his termination and that he does not plead sufficiently that there were similarly situated individuals treated more favorably. Def.'s Mem. 10–11.

Mr. Philogene's Amended Complaint states that he "performed satisfactorily for almost three years and received 3 rases [sic]," yet was terminated, while "Darren Disque (white) performed sub-par and was never re-primanded [sic]. The plaintiff was treated on a different standard based on his race." Am. Compl. 4.

In order to raise a claim of discrimination, Mr. Philogene must plead that he was performing satisfactorily *at the time of his termination. Mason v. Montgomery Cty*, No. PWG-13-1077, PWG -14-3718, 2015 WL 3891808, *5 (citing *Lettieri v. Equant, Inc.*, 478 F.3d 640, 646 (4th Cir. 2007)). In *Mason*, the plaintiff alleged that he

> performed exemplary work and received many letters of appreciation for his dedication and operating beyond his assigned duties, . . . . worked well with his peers and there were no issues [with his performance]' until he complained, and he performed well and met all of the Department's legitimate expectations.

2015 WL 3891808, *5 (internal quotations omitted). The Court dismissed Mason's claim as insufficiently pleaded, reasoning that these allegations were "threadbare and conclusory," especially given that Mason failed to establish a time frame for his "exemplary work." *Id.* (citing *Iqbal*, 556 U.S. at 678–79).

Here, Mr. Philogene has only alleged vaguely that he "performed satisfactorily for almost three years" and "received 3 rases [sic]" at some undisclosed point in time. Am. Compl. 4. Mr. Philogene provides no context for when he received raises or any other information to allow this Court to know whether he was performing adequately in February 2017 (the time of his dismissal) and not solely earlier in the span of his tenure with the Company. This case is akin to *Mason*, as Mr. Philogene's pleadings regarding his performance are nothing more than threadbare and conclusory, and it is unclear if he was performing satisfactorily *at the time* of his termination. *See id.* As such, Mr. Philogene's discrimination claims based on his termination will be dismissed.[5] *See Lettieri*, 478 F.3d at 646; *Mason*, 2015 WL 3891808, at *5.

*Harassment/Hostile Work Environment on the Basis of Race and Color*

In order to state a Title VII claim for harassment/hostile work environment,[6] Mr. Philogene must allege that he was subjected to "offending conduct" that (1) "was unwelcome," (2) "was because of" his race, (3) "was sufficiently severe or pervasive to alter the conditions of

---

[5] Because Mr. Philogene's discrimination fails to plead if he was performing his job at a satisfactory level, I need not address whether he sufficiently pleaded that he received "less favorable treatment than similarly situated employees outside the protected class." *See Linton*, 2011 WL 4549177, at *5.

[6] Harassment is another name for and an element of a hostile work environment claim. *See Noel v. United Parcel Serv., Inc.*, No. PWG-13-1138, 2014 WL 4452667, at *8 (D. Md. Sept. 9, 2014) ("To prevail on a hostile work environment claim, Noel must show that "[ ]he was subjected to *harassment* in h[is] workplace that was: (1) unwelcome; (2) based on race [or color or national origin]; (3) severe or pervasive; and (4) imputable to the employer.") (quoting *Linton*, 2011 WL 4549177, at *11) (emphasis added))

her employment and create an abusive working environment," and (4) "was imputable to [his] employer." *Westmoreland v. Prince George's Cty.*, 876 F. Supp. 2d 594, 614 (D. Md. 2012) (quoting *Hoyle v. Freightliner, LLC,* 650 F.3d 321, 331 (4th Cir. 2011)). Mr. Philogene alleges that numerous comments and actions taken by Defendant or its employees were based on racial animus. For example, Mr. Philogene alleges that his supervisors removed him from his assigned cubicle, "constantly" called him into meetings, fabricated stories about him to other members of his team, spoke to him in a condescending matter, yelled at him, and made comments such as "Let's poke the Bear." Am. Compl. 2–3. Mr. Philogene also alleges that Lora Neal (presumably another employee at the Company) told him that "Ray told her 'Slavery is the best thing that ever happened to America.'" *Id.* at 4.

Defendant argues that this claim should be dismissed because Mr. Philogene's allegations do not demonstrate that its conduct or that of its employees was sufficiently severe or pervasive to demonstrate he was subjected to a hostile work environment. Def.'s Mem. 12–13. In particular, the Company argues that, for all but one of the alleged actions, Mr. Philogene's Amended Complaint does not allege that the actions were because of his race or color. It also contends that the single comment relating to race or color—the one regarding slavery—was not directed at him, and therefore, is insufficient to give rise to a plausible claim for a hostile work environment. *Id.* at 13.

The majority of the alleged actions (taking away a seating assignment, calling him into meetings, making comments, fabricating stories, being condescending or yelling), even taken cumulatively, were not sufficiently severe or pervasive to give rise to a hostile work environment claim. Rather, many of these actions indicate normal work place events (e.g. being called to meetings) rather than adverse employment actions, or at most rude behavior unbecoming of a

supervisor (e.g. yelling at subordinates) and therefore do not support a harassment claim. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (holding that the standards for judging hostility are meant to "ensure that Title VII does not become a 'general civility code'") (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)). Moreover, there are no allegations that these acts were based on Mr. Philogene's race or color. Further, while a comment praising slavery certainly could be severe enough to form the basis for a hostile workplace claim, *see Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 281 (4th Cir. 2015) (identifying that a singular, isolated event of harassment can be so severe as to state a viable hostile work environment claim), here, the comment was neither directed toward Mr. Philogene nor said in his presence. Although this statement may be evidence of Ms. Ray's alleged reprehensible views, as they were not directed at Mr. Philogene, "however objectionable [they were, they constitute] the very sort of offhand comment[] and isolated incident[] that cannot support a hostile work environment claim." *Strothers v. City of Laurel*, 118 F. Supp. 3d 852, 864–65 (D. Md. 2015) (citing *Faragher*, 524 U.S. at 778). Therefore, Mr. Philogene's claim for hostile work environment will be dismissed.

*Retaliation for Protected Activities*

The elements of a Title VII retaliation claim are: "(1) engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and the employment action." *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010). To survive the Company's Motion to Dismiss, Mr. Philogene's "factual allegations must be enough to raise a right to relief above the speculative level." *Id.* (quoting *Iqbal*, 556 U.S. at 679).

Mr. Philogene alleges that "[n]umerous complaints were made to several managers in and outside of HR. (Sue Dowling, Alan Thomas, and Trina Colie) about this violation. This went on

until February 17 of 2017." Am. Compl. 2. Although he does not clarify what he meant by "this," he makes this allegation under the header "Violations of the Civil Rights of 1964, Title VII [sic]," and he attaches his emails to Human Resources on October 1, 2015 and May 19, 2016 in which he complained of harassment. *Id.* Further, Mr. Philogene alleges that he "put them on notice" and the company "terminated [him] on February 17, 2017 (for not meeting requirements)." *Id.* at 3. Mr. Philogene specifically alleges that Crystal Ray and Bryan Hennessy retaliated against him for "constantly complaining about them to the company" and that "they acted on revenge by firing [him]." *Id.* at 5–6.

Mr. Philogene also alleges that he "made Sue Dowling aware that Crystal Ray filed a complaint against Torrance Jacobs (Black manager). He was demoted and removed from the group." Am. Compl. 3. Although Mr. Jacobs's demotion was not an action directed against Mr. Philogene, the Fourth Circuit has found that involvement in others complaints about discrimination may be protected activity, under circumstances in which the plaintiff is actively engaged in raising concerns about conduct reasonably believed to be discriminatory that was directed towards others. *See DeMasters v. Carilion Clinic*, 796 F.3d 409, 417–18 (4th Cir. 2015) (agreeing with the First Circuit's holding in *Collazo v. Bristol–Myers Squibb Mfg., Inc.,* 617 F.3d 39, 47–48 (1st Cir. 2010), that "where the plaintiff had arranged meetings with the HR department for a co-worker and then complained to HR about problems with his company's ongoing internal investigation of the co-worker's complaint, the First Circuit, reviewing the full range of the plaintiff's conduct, held that his 'persistent efforts to help [the victim] initiate her sexual harassment complaint and urge Human Resources to act upon that complaint' constituted protected opposition activity."). But here, Mr. Philogene has not alleged anything beyond that he made a member of Human Resources aware of a complaint that had been previously filed by Ms.

13

Ray against Mr. Jacobs; he has not alleged that he affirmatively asserted his rights by making a complaint of mistreatment of Mr. Jacobs, or that he had advocated on his behalf. Therefore, this alleged reporting is insufficient to be a protected activity. *See id.*

Assuming for argument's sake that Mr. Philogene's complaints to Human Resources were sufficient to be deemed protected activity, Mr. Philogene does not establish causation. The most recent complaint alleged in more than conclusory terms was made in a May 19, 2016 email. Although not clearly articulated, nine months lapsed between the time Mr. Philogene may have placed the Company on notice for the second time (May 2016) and his eventual termination (February 2017). *See id.*; Am. Compl. 1.

This nine month period is, by far, "too long a period for Plaintiff to establish a causal relationship on temporal proximity alone." *Wilson v. City of Gaithersburg*, 121 F. Supp. 3d 478, 485–86 (D. Md. 2015); *see also Clark Cty. Sch. Dist. v. Breeden,* 532 U.S. 268, 273 (2001) ("The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'") (citation omitted); *Horne v. Reznick Fedder & Silverman,* 154 F. App'x 361, 364 (4th Cir. 2005) ("[A] lapse of two months between the protected activity and the adverse action is 'sufficiently long so as to weaken significantly the inference of causation.'" (quoting *King v. Rumsfeld,* 328 F.3d 145, 151 n.5 (4th Cir. 2003)); *Westmoreland v. Prince George's Cty.,* 876 F. Supp. 2d 594, 607–08 (D. Md. 2012) ("Although there is no bright-line rule on the issue of temporal proximity, the Fourth Circuit has held that a lapse of over three months between the protected activity and the alleged retaliation is too long to give rise to an inference of causality.").

Further, Mr. Philogene's original and amended complaints do not clearly indicate when or what protected activity occurred other than the October 2015 and May 2016 emails. In *German v. Akal Security, Inc.*, No. CCB-11-1242, 2011 WL 5974619, at *6 (D. Md. Nov. 29, 2011), this Court concluded that a retaliation claim was subject to dismissal because there was "only [one] protected activity in the complaint with an identifiable date" and "only [one] subsequent adverse employer action cited with sufficient specificity." The Court reasoned that the "four-month gap [between the events] may be too long to provide a causal link between the two actions." *Id.* The Court also observed that the plaintiff's allegation that "her earlier demotion was 'a result of Plaintiff complaining of Defendants' discriminatory and retaliatory conduct,' . . . lack[ed] sufficient information to infer causality through temporal proximity." *Id.*

Here, Defendant asserted that Mr. Philogene's retaliation claim failed to state a cause of action for retaliation. Mr. Philogene had the opportunity to amend to cure the deficiencies. But, as amended, the pleading still does not provide any dates or more specific timeframe so as to allege that any of the protected activities occurred sufficiently close to his termination to give rise to an inference of causality. Thus, I cannot infer causation where the only specifically alleged protected activities occurred nine months or more before Mr. Philogene's termination. *See id.*; *see also Horne*, 154 F. App'x at 364; *King*, 328 F.3d at 151 n.5.

Thus, the facts do not sufficiently allege any causal connection between the October 2015 or May 2016 complaints and the termination to bring Mr. Philogene's right to relief on his retaliation claim "above the speculative level." *See Coleman*, 626 F.3d at 190; *Lettieri,* 478 F.3d at 650; *Westmoreland,* 876 F. Supp. 2d at 607–08. Accordingly, Mr. Philogene's retaliation claim will be dismissed.

## Conclusion

Accordingly, this Court does not have subject matter jurisdiction over Plaintiff's national origin-based claims, and Plaintiff has failed to state a claim for discriminatory termination or hostile work environment on the basis of race or color. Nor has he stated a claim for retaliation. Additionally, Mr. Philogene's failure to address Defendant's arguments constitutes an abandonment of his claims. I will therefore grant Defendants' Motion to Dismiss. As noted, Mr. Philogene amended his Complaint after the Company filed a letter request to file a motion to dismiss, in which they identified Mr. Philogene's pleading deficiencies and provided citations to Fourth Circuit and this Court's case law. Pre–Mot. Ltr. Despite that guidance, Mr. Philogene failed to cure his pleading deficiencies when he filed his amended complaint. Moreover, given the legal deficiencies noted above with regard to the claims against the Company, further amendment would be futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (noting that reasons to deny leave to amend include, *inter alia*, "repeated failure to cure deficiencies by amendments previously allowed" and "futility of amendment"). Thus, considering Mr. Philogene's failure to state a claim in his amended complaint after having been advised with specificity of the legal deficiencies in his initial complaint, dismissal with prejudice is appropriate. *See Weigel v. Maryland*, 950 F. Supp. 2d 811, 825–26 (D. Md. 2013); *see also Adams v. Sw. Va. Reg'l Jail Auth.*, 524 Fed. App'x. 899, 900 (4th Cir. 2013).

## ORDER

Accordingly, it is, this 21st day of February, 2018 hereby ORDERED that:

1. The Motion to Dismiss, ECF No. 20, IS GRANTED;

2. The Amended Complaint IS DISMISSED WITH PREJUDICE; and

3. The Clerk is DIRECTED to CLOSE THIS CASE and MAIL a copy of the Memorandum Opinion and Order to Plaintiff.

          /S/
Paul W. Grimm
United States District Judge

jml